UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT DOCKET

*ELECTRONICALLY FILED*

PROTECT MY CHECK, INC.                                        **PLAINTIFF**

v.                                        CIVIL ACTION NO. 3:15-CV-42-GFVT

CRAIG C. DILGER, Chairman, Kentucky
Registry of Election Finance, in his official capacity; and
JOHN STEFFEN, Executive Director, Kentucky
Registry of Election Finance, in his official capacity        **DEFENDANTS**


**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF AUTHORITIES

## Federal Cases

*Abood v. Detroit Bd. of Ed.*,
    431 U.S. 209 (1977)...............................................................17

*Agostini v. Felton*,
    521 U.S. 203 (1997) ...........................................................11

*Austin v. Michigan Chamber of Commerce*,
    494 U.S. 652 (1990)........................................................passim

*Bowen v. Kendrick*,
    483 U.S. 1304 (1987)...........................................................21

*Buckley v. Valeo*,
    424 U.S. 1 (1976)...........................................................passim

*Cal. Med. Ass'n v. FEC*,
    453 U.S. 182 (1981)...............................................................18

*Citizens United v. Federal Election Commission*,
    558 U.S. 310 (2010)........................................................passim

*City of Cleburne v. Cleburne Living Ctr.*,
    473 U.S. 432 (1985)...............................................................16

*Cutshall v. Sundquist*,
    193 F.3d 466 (6th Cir. 1999)...........................................16

*FEC v. Beaumont, et al.*,
    539 U.S. 146 (2003) .......................................................passim

*FEC v. Colorado Republic Federal Campaign Commission*,
    533 U.S. 431 (2001)...............................................................12

*FEC v. National Right to Work Committee*,
    459 U.S. 197 (1982)........................................................13, 18

*Green Party of Tennessee v. Hargett*,
    791 F.3d 684 (6th Cir. 2015)...........................................16

*Holmes v. FEC*,
    71 F.Supp.3d 178 (D.D.C. 2014)......................................20, 21

*Illinois Liberty PAC v. Madigan,*
    902 F.Supp.2d 1113 (N.D. Ill. 2012)...........................................................16

*Iowa Right to Life Comm. v. Tooker,*
    717 F.3d 576 (8th Cir. 2013)...........................................................passim

*Kentucky Right to Life, Inc. v. Terry,*
    108 F.3d 637 (6th Cir. 1997)...........................................................passim

*Lair v. Bullock,*
    697 F.3d 1200 (9th Cir. 2012)...............................................................21

*McCutcheon v. FEC,*
    134 S.Ct. 1434 (2014)...........................................................passim

*McNeilly v. Land,*
    684 F.3d 611 (6th Cir. 2012)...............................................................20

*Minnesota Citizens Concerned for Life v. Swanson,*
    692 F.3d 864 (8th Cir. 2012)...........................................................passim

*NAACP v. Alabama,*
    357 U.S. 449 (1958)...............................................................3, 21

*Nordinger v. Hahn,*
    505 U.S. 1 (1992)...............................................................16

*Ognibene v. Parkes,*
    671 F.3d 174 (2nd Cir. 2011)...................................................11, 17, 19

*Ohio Republican Party v. Brunner*
    543 F.3d 357...............................................................8

*O'Toole v. O'Connor*
    2015 WL 3505524 (S.C. Ohio, June 3, 2015)...............................................8

*Riddle v. Hickenlooper,*
    742 F.3d 922 (10th Cir. 2014)...............................................................16

*Rufer v. FEC,*
    64 F.Supp.3d 195...............................................................20, 21

*Sindicato Puertorriqueno de Trabaiadores v. Fortuno*
    699 F.3d 1 (1st Cir. 2012)...............................................................12

*Thalheimer v. City of San Diego,*
    645 F.3d 1109 (9th Cir. 2011)................................................................11, 15

*Turner Broadcasting Svs. v. FCC,*
    512 U.S. 622 (1994)..................................................................................16

*U.S. v. Automobile Workers,*
    352 U.S. 567 (1957)..................................................................................12

*U.S. v. Danielczyk,*
    683 F.3d 611 (4th Cir. 2012) .....................................................................12

*Wagner v. FEC,*
    854 F. Supp. 2d 83 (D.D.C. 2012)..............................................................16

*Winter v. National Resources Defense Council. Inc.,*
    555 U.S. 7 (2008).................................................................................8, 20

**Kentucky Cases**

*Commonwealth v. Kentucky Jockey Club,*
    38 S.W.2d 987 (1931)..................................................................................3

**Other State Cases**

*Dallman v. Ritter,*
    225 P.3d 610 (Colo. 2010)..........................................................................17

*Minn. Assn. of Commerce & Ind. v. Foley,*
    316 N.W.3d 524 (Minn. 1982)....................................................................14

**Federal Statutes and Session Laws**

52 U.S.C.A. § 30118(a) .....................................................................................4

**Kentucky Constitution**

Section 150.............................................................................................passim

**Kentucky Statutes**

KRS 121.025....................................................................................4, 5, 8

KRS 121.035....................................................................................4, 5, 8

KRS 121.150.............................................................................................passim

KRS 121.170..........................................................................................6, 14

KRS 121.015...........................................................................................7, 19

KRS 275.001.................................................................................................19

KRS 271B.1-010............................................................................................19

**Kentucky Regulations**

32 KAR 2:170...............................................................................................5, 8

32 KAR 1:060................................................................................................7

**Other State Statutes**

Alaska Stat. § 15.13.074 ............................................................................4

Arizona Rev. Stat. § 16-919(A) ..................................................................4

Colo. Rev. Stat. § 1-45-103.7......................................................................4

Conn. Gen. Stat. §§ 9-613 ..........................................................................4

Iowa Code § 68A.503...................................................................................4, 19

Mass. Gen. Laws Ch. 55, § 8 ......................................................................4, 19

Mich. Comp. Laws § 169.254 .....................................................................4

Minn. Stat. § 211B.15 ..................................................................................4, 19

Minn. Stat. §211B.15 (16) ...........................................................................14

Miss. Code § 97-13-15 .................................................................................19

Mont. Code Ann. § 13-35-227 .....................................................................4,19

N.C. Gen. Stat. § 163-278.15........................................................................4

N.D. Cent. Code § 16.1-08.1-03 ...................................................................4

Ohio Stat. § 3599.03 .....................................................................................4

Okla. Stat. tit. 21, § 187.1 .............................................................................4

iv

Pa. Stat. tit. 25, § 3253 ...........................................................................4

R.I. Gen. Laws § 17-25-10.1 ....................................................................4

S.D. Codified Laws § 12-27-18 .................................................................4

Tex. Elec. Code § 253.094 .......................................................................4

W. Va. Code §3-8-8 ...........................................................................4, 19

Wis. Stat. § 11.38 ..................................................................................4

Wyo. Sta. § 22-25-102 ...........................................................................4

**Kentucky Advisory Rulings**

Ky. Op. Atty. Gen. 91-80............................................................................5

Ky. Registry Advisory Opinion 2010-001
    available at http://kref.ky.gov/opinions/Pages/default.aspx......................6, 15

Ky. Registry Advisory Opinion 2010-002
    available at http://kref.ky.gov/opinions/Pages/default.aspx......................6, 15

Ky. Registry Advisory Opinion 2014-003
    available at http://kref.ky.gov/opinions/Pages/default.aspx.......................... 6

Ky. Registry Advisory Opinion 2010-006
    available at http://kref.ky.gov/opinions/Pages/default.aspx......................6, 14

Ky. Registry Advisory Opinion 2002-006
    available at http://kref.ky.gov/opinions/Pages/default.aspx.......................... 7

**Other States Advisory Opinions**

Minn. Adv. Op. 115, 1991 WL 734371 (Dec. 9, 1991)..............................................14

**Miscellaneous Reference**

*Citizens' Guide to the Constitution*,
    Research Report No. 137, KY Legislative Research Commission (June 2013)
    Available at http://www.lrc.ky.gov/lrcpubs/RR137.pdf.........................................1, 13

October 21, 2009 Statement by Senator John McCain on the
    U.S. Supreme Court Case *Citizens United v. Federal Election Commission*,
    available at http://www.mccain.senate.gov/public/index.cfm/floor-statements.................4

## PRELIMINARY STATEMENT

Delegates to Kentucky's Constitutional Convention of 1890-1891 had legitimate reasons to prohibit corporate influence in elections. Following havoc wreaked by the Civil War, railroad corporations - one financed by the City of Louisville and the other by Cincinnati businessmen - dueled for control of trade routes from Southern markets through Kentucky. Central Kentucky producers, and particularly farmers, were stuck in the middle of the feud. Their livelihood depended on getting products to market, and corporations took advantage of the situation to charge a premium for rail service. Behind the scenes, corporate railroad promoters offered petty favors and bribes to Kentucky lawmakers in exchange for favorable treatment on legislation favorable to their commercial projects. It is against this backdrop that Section 150 of Kentucky's current Constitution, adopted in 1891, prohibits corporations from using money or other things of value to influence an election.[1]

The public interest in preventing undue corporate influence in elections is no less important today than it was over 100 years ago. Plaintiff, Protect My Check, Inc., organized as a corporation less than one year ago in Florida and registered to do business in Kentucky less than six (6) months ago.[2] Plaintiff's stated purpose is to promote "right to work" legislation in cities and counties. As a fledgling corporation, exempt from taxation and donor disclosure rules under § 501(c)(4) of the Internal Revenue Code, Plaintiff now seeks to change Kentucky's Constitution and related statutory provisions so it may also make political contributions to candidates and political parties.

---

[1] *Citizens' Guide to the Constitution*, Research Report No. 137, KY Legislative Research Commission (June 2013) pp. 101-103.

[2] See attached Exhibit A: Electronic Articles of Incorporation for Protect My Check, Inc., filed September 15, 2014 with the Florida Secretary of State's Office, and Exhibit B: Certificate of Authority as Foreign Business Entity filed April 15, 2014 with the Kentucky Secretary of State's Office.

The corporate contribution ban has existed in Kentucky law since 1891. Such a ban is a uniform feature of federal law and the laws of 20 other states. Plaintiff has no likelihood of success on the merits. The Sixth Circuit has previously upheld Kentucky's corporate contribution prohibition under the First Amendment, citing the state's interest in limiting potential corruption. *Kentucky Right to Life, Inc. v. Terry*, 108 F.3d 637, 646 (6th Cir. 1997). The Supreme Court has upheld campaign finance restrictions on corporations as consistent with the First and Fourteenth Amendments. *See Federal Election Commission v. Beaumont*, 539 U.S. 146 (2003) (upholding federal ban on corporate contributions under the First Amendment) and *Austin v. Michigan Chamber of Commerce*, 494 U.S. 652 (1990) (permitting differential treatment of corporations and unincorporated associations under Fourteenth Amendment).

Plaintiff is wrong that *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010), which addressed only independent spending by corporations, overruled these prior Supreme Court precedents cited above. Accordingly, these cases remain binding authority on this Court. For this reason, the Eighth Circuit in two recent cases, *Iowa Right to Life Committee v. Tooker*, 717 F.3d 576 (8th Cir. 2013), and *Minnesota Citizens Concerned for Life v. Swanson*, 692 F.3d 864 (8th Cir. 2012), rejected free speech and equal protection claims similar to those brought here, challenging the corporate contribution bans under Iowa and Minnesota's laws that, as in Kentucky and four other states, do not extend to labor unions. Likewise, a Motion for Preliminary Injunction very similar to the one before this Court was recently denied by the Suffolk County Superior Court on a challenge to Massachusetts law.

Plaintiff cannot demonstrate that it will suffer irreparable injury without the preliminary injunction. The law leaves ample opportunities for corporations to participate in the political process. Forfeiture of the right to do business in Kentucky for improper political activities may

2

only result from a criminal proceeding where there is a judgment of conviction. *Commonwealth v. Kentucky Jockey Club*, 38 S.W.2d 987 (1931). Plaintiff also cannot reasonably claim that the injunction will cause no substantial harm to others. Changing the state constitution to allow corporations to make political contributions is no small matter, particularly during a statewide election year. In less than three (3) months, Kentucky voters will elect statewide officers.

The public in fact will be substantially harmed in this instance because Plaintiff is not a transparent entity. Disclosure of the true source of funds contributed to political candidates provides Kentucky voters with a means to determine whether campaign money ultimately influences the decisions made by a public officer. As a 501(c)(4) non-profit corporation, Plaintiff's donors are exempt from public disclosure. *NAACP v. Alabama*, 357 U.S. 449 (1958). The public interest in disclosure as a means to prevent *quid pro quo* corruption is at stake because, if an injunction is granted, there will be no means for Kentucky voters to determine the true source of funds that Plaintiff says it will contribute to Kentucky candidates and committees. From the perspective of the Kentucky Registry of Election Finance (Registry), it is the donor disclosure threshold, and not the base contribution limit, that indicates the legislature's belief that some contributions do not create a cognizable risk of corruption. In any event, Kentucky's corporate contribution prohibition should be upheld as it matches the state's objective to prevent actual and apparent *quid pro quo* corruption in elections. *McCutcheon v. Federal Election Commission*, 134 S.Ct. 1434 (2014).

## STATUTORY AND REGULATORY BACKGROUND[3]

A.   Corporate Political Contributions

Kentucky may have been the first state to prohibit corporate political contributions.[4]  In addition to the Federal Election Campaign Act (FECA), the laws of 20 other states ban corporate contributions.[5]  Based on the corporate contribution ban found in Section 150 of the Kentucky Constitution, KRS 121.025 states: "No corporation authorized to do business in this state or in another state, and no officer or agent of a corporation on its behalf, shall contribute, either directly or indirectly, any money, service, or other thing of value towards the nomination or election of any state, county, city, or district officer in this state, or pay, promise, loan, or become liable in any way for any money or other valuable thing on behalf of any candidate for office at any election, primary or nominating convention held in this state.  No attorney or other person shall accept employment and compensation from a corporation with the understanding or agreement, either direct or implied, that he will contribute to any such candidate, or on his behalf, any part of such compensation, towards the nomination or election of such candidate." *See* KRS 121.025.

KRS 121.035 further prohibits corporate contributions to aid candidates for public office; however, KRS 121.035(3) states as follows: "Nothing in this section shall be construed to

---

[3] Copies of the relevant statutes, regulations, and Advisory Opinions are attached as Exhibits 1-12 of Exhibit C: Affidavit of Emily Dennis ("Dennis Aff.") submitted herewith.

[4] October 21, 2009 Statement by Senator John McCain on the U.S. Supreme Court Case *Citizens United v. Federal Election Commission.*

[5] *See* 52 U.S.C. § 30118(a) (formerly, 2 U.S.C. § 441b); Alaska Stat. § 15.13.074; Arizona Rev. Stat. § 16-919(A); Colo. Const. Art. XXVIII, § 3; Conn. Gen. Stat. §§9-613; Iowa Code § 68A.503; Mass. Gen. Laws Ch. 55, §8; Mich. Comp. Laws § 169.254; Minn. Stat. § 211B.15; Mont. Code Ann. § 13-35-227; N.C. Gen. Stat. § 163-278.15; N.D. Cent. Code § 16.1-08.1-03.5; Ohio Stat. § 3599.03; Okla. Stat. tit. 21, § 187.1; Pa. Stat. tit. 25, § 3253; R.I. Gen. Laws § 17-25-10.1; S.D. Codified Laws § 12-27-18; Tex. Elec. Code § 253.094; W. Va. Code § 3-8-8; Wis. Stat. § 11.38; Wyo. Stat. § 22-25-102.

prohibit a corporation from making contributions in support of a constitutional amendment, a public question which appears on the ballot, or position on an issue of public importance." The statute continues: " . . . (n)othing in this section shall be construed to prohibit a not-for-profit corporation, which does not derive a substantial portion of its revenue from for-profit corporations, from making independent expenditures." *See* KRS 121.035.

KRS 121.150(20) states: "No candidate, slate of candidates, committee, except a political issues committee, or contributing organization, nor anyone on their behalf, shall knowingly accept a contribution from a corporation, directly or indirectly;" however, KRS 121.150(21) provides: "Nothing in this section shall be construed to restrict the ability of a corporation to administer its permanent committee insofar as its actions can be deemed not to influence an election as prohibited by KRS 121.025." *See* KRS 121.150. In 1991, the Attorney General's Office construed the language of KRS 121.150 as requiring corporate permanent committees (PACS) to reimburse, out of PAC funds, any expenditure made by the corporate hosts in administering the PAC. *See* Ky. Op. Atty. Gen. 91-80.

Regarding in-kind contributions, the Registry's regulation states that a business enterprise may make an in-kind contribution to a candidate, slate of candidates, committee, or contributing organization, so long as the business enterprise is not incorporated. If corporate funds or assets are used by the owner of a corporation to make personal in-kind contributions to a political campaign, then the actual costs of the funds or assets must be reimbursed to the corporation from the owner's personal funds, and a candidate must not accept the use of a corporation's assets unless the fair market value is billed to the campaign and paid for with campaign funds. *See* 32 KAR 2:170.

While Kentucky's Constitution and the above campaign finance provisions prohibit corporations from using money or other things of value to influence an election, the Registry has stated by Advisory Opinion that a corporation may form or otherwise contribute in unlimited amounts to an unauthorized campaign committee, the purpose of which is to make independent expenditures only, to support or oppose a candidate for public office. *See* Advisory Opinion 2010-001 and Advisory Opinion 2010-002. In addition, corporations may form state permanent committees to receive contributions from permissible sources and make expenditures from said permanent committees to support or oppose candidates. *See* Advisory Opinion 2014-003.

A corporation may also form a federal PAC, which may then make contributions to Kentucky state and local candidates, with minimal reporting requirements to the Registry. *See* Advisory Opinion 2010-006. "(A) contribution made by a federally registered [PAC] to any candidate or slate of candidates for any office in this Commonwealth that complies with the provisions of 2 U.S.C. §441b, 11 C.F.R. § 104.10, 11 C.F.R. §106.6, and 11 C.F.R. § 114.1-114.12 regarding limitations on contributions by corporations shall be deemed to comply with the campaign finance laws of this Commonwealth prohibiting corporate contributions to candidates or slates of candidates." *See* KRS 121.170 (5) & (6).

B.  Contribution Limits for "Person", "Permanent Committee", and "Contributing Organization"

In addition to prohibiting corporate political contributions, Kentucky law imposes contribution limits on a "person," "permanent committee" (PAC), and "contributing organization." Under KRS 121.150(6), a person, PAC, or contributing organization may contribute no more than $1,000 to a candidate or campaign committee. Contributions from a contributing organization to a PAC are limited to $1,500 and $2,500 to an executive committee or caucus campaign committee. For purposes of applying the contribution limits, PAC or

contributing organizations affiliated by bylaw structure or registration are considered as one (1) committee. *See* KRS 121.150(6). Thus, if a union PAC makes a $1,000 contribution to a candidate, then the union cannot also give the candidate a second $1,000 contribution due to its affiliation with the union PAC. *See* Advisory Opinion 2002-006.

To the extent that any unincorporated organization, including a labor union or LLC, makes a contribution to a candidate or committee regulated by the Registry, the unincorporated organization is at all times subject to the provisions of KRS Chapter 121 and is required to register and report as a contributing organization. "Contributing organization" is defined by KRS 121.015(4) as "a group which merely contributes to candidates, slates of candidates, campaign committees, caucus campaign committees, or executive committees from time to time from funds derived solely from within the group, and which does not solicit or receive funds from sources outside the group itself. However, any contributions made by the groups in excess of $100 shall be reported to the Registry." *See* KRS 121.015 and 32 KAR 1:060; *see also* Exhibit 10 to Defendants' Response: KREF Form 012 (Revised 05/2005) - Report of contributions by a contributing organization.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff is a tax-exempt, 501(c)(4), social welfare corporation organized in Florida that seeks to contribute " . . . directly or indirectly, money or other things of value to aid the election of candidates for public office in this State and to political or quasi-political organizations to be used by such organizations for the purpose of aiding, assisting or advancing candidates for public office in this state." Compl., ¶8. Plaintiff seeks to "make . . . contributions to candidates, parties and committees that support candidates" and would establish, finance, maintain, and control a PAC to make such contributions. *Id.*

Plaintiff alleges that Section 150 of the Kentucky Constitution, KRS 121.025, KRS 121.035, KRS 121.150(2), and 32 KAR 2:170, "on their face and as applied by [the Registry]" *id.*¶12, violates its rights to free speech and association under the First and Fourteenth Amendments by prohibiting it from making political contributions, *id.*, ¶¶44, 47 (Second Claim for Relief). Plaintiff also alleges that "[b]y applying different contribution limits to unions, LLCs, and corporations," the Registry "maintain[s] and actively enforce[s] a set of laws, practices, policies, and procedures under color of state law" that violates Plaintiff's right to equal protection under the federal constitution. *Id.* ¶40 (First Claim for Relief).

Plaintiff filed the Complaint on June 18, 2015, and served the Motion for Preliminary Injunction on August 10, 2015, pursuant to Fed.R.Civ.P.65.

## ARGUMENT

## STANDARD OF REVIEW

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Resources Defense Council. Inc.*, 555 U.S. 7, 24 (2008). A preliminary injunction is only appropriate where Plaintiff establishes the following factors: (1) a strong likelihood of success on the merits; (2) that Plaintiff will suffer irreparable injury without the injunction; (3) the injunction does not substantially harm others; and (4) the public interest is served by granting the injunction. *O'Toole v. O'Connor*, 2015 WL 3505524 (S.C. Ohio, June 3, 2015), citing *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361, 903 (6th Cir. 2008); *see also Winter*, 555 U.S. at 20.

Because Plaintiff fails to establish these factors, the motion for preliminary injunction should be denied.

I. **PLAINTIFF HAS NO LIKELIHOOD OF SUCCESS ON THE MERITS BECAUSE CONTROLLING PRECEDENTS FROM THE UNITED STATES SUPREME COURT AND SIXTH CIRCUIT AND PERSUASIVE AUTHORITY FROM THE EIGHTH CIRCUIT HAVE REJECTED THE CLAIMS RAISED IN THIS ACTION.**

Plaintiff fails to demonstrate a likelihood of success on the merits of its free speech and equal protection claims, which are foreclosed by the Supreme Court's decisions in *Beaumont* and *Austin*. Kentucky's corporate contribution prohibition previously survived a First Amendment challenge in the Sixth Circuit in *Kentucky Right to Life*. In two (2) recent cases, the Eighth Circuit applied the binding Supreme Court decisions in *Beaumont* and *Austin* to the same claims raised here regarding Iowa's and Minnesota's campaign finance laws, specifically rejecting the argument that *Citizens United* overruled governing law regarding corporate contribution restrictions. This Court should follow the above precedents and persuasive reasoning of the Eighth Circuit in denying this motion for preliminary injunction.

A.   Under *Beaumont*, Kentucky's Ban on Corporate Political Contributions Does Not Violate the First Amendment.

A ban on corporate political contributions is a uniform feature of the FECA and the laws of 20 other states. *See supra* at 4 & n.2. Plaintiff acknowledges that the Supreme Court has long upheld the federal ban on corporate contributions as consistent with the First Amendment, but argues that those decisions were "largely repudiated" by *Citizens United* and other recent cases. Pls. Mem. at 12. Plaintiff also argues that, to pass constitutional muster, the Kentucky ban must include FECA's provision allowing for corporate administrative support to an affiliated PAC. *Id.* at 13-14 ("[a]t the very least, the contribution ban must be enjoined because it lacks a 'PAC option'"). As explained below, the Supreme Court's decision in *Beaumont* remains binding authority on this Court. And, the Eighth Circuit, applying *Beaumont*, rejected similar challenges

to other states' laws, even where a FECA-style "PAC option" did not exist. Thus, Plaintiff's claim fails.

1.   *The Standard of Review for Assessing Restrictions on Political Contributions is Less Than Strict Scrutiny.*

Plaintiff incorrectly argues that this Court must apply strict scrutiny when reviewing Kentucky's corporate contribution restriction. *See* Pls. Mem. at 5-6. Under *Buckley v. Valeo*, 424 U.S. 1 (1976), a restriction on contributions may be justified based on a "sufficiently important [state] interest" that "employs means closely drawn to avoid unnecessary abridgement of associational freedoms." *McCutcheon v. FEC*, 134 S.Ct. 1434, 1444 (2014) (quoting *Buckley*, 424 U.S. at 25); *see also* Pls. Mem. at 12 (citing the standard as set forth in *McCutcheon*). This standard is less stringent than "strict scrutiny," which applies to political expenditures, because restricting contributions "entails only a marginal restriction upon the contributor's ability to engage in free communication." *Buckley*, 424 U.S. at 20-21 (explaining that the "transformation of contributions into political debate involves speech by someone other than the contributor").

2.   *The Supreme Court Has Upheld the Constitutionality of a Corporate Contribution Ban as Consistent with the First Amendment, and in Any Event, Section 150 of the Kentucky Constitution Meets the* Buckley *Standard.*

Plaintiff's challenge to Kentucky's corporate contribution ban is foreclosed by *Federal Election Commission v. Beaumont*, 539 U.S. 146, (2003), which upheld the constitutionality of the federal ban on corporate contributions as consistent with the First Amendment. The Court held that the ban was justified by, among other things, a governmental interest in combatting corruption in elections. *Id.* at 152-54 (surveying century of congressional efforts to combat "corporations' potentially 'deleterious influences on federal elections'," and upholding federal ban as intended to "preven[t] corruption or the appearance of corruption") (citation omitted). The

Court also found that the ban was "closely drawn," despite the fact that the federal provision applies to non-profit corporations, stating that the ban is a "prophylactic measure[]" that need not turn on the "details of corporate form or the affluence of particular corporations." *Id*. at 157, 161. Because neither *Citizens United* nor other law has overruled *Beaumont,* that decision "dictate[s]" the result in this case. *Iowa Right to Life*. 717 F.3d at 601 (upholding Iowa corporate contribution ban based on *Beaumont*); *Minnesota Citizens*, 692 F.3d at 879 (denying motion for preliminary injunction regarding Minnesota law, citing *Beaumont*): *see also Agostini v. Felton*, 521 U.S. 203, 237 (1997) (cautioning lower courts against finding that "our more recent cases have, by implication, overruled an earlier precedent," and stating that lower courts should "leav[e] to this Court the prerogative of overruling its own decisions").

Citizens United overruled only that portion of *Austin v. Michigan Chamber of Commerce*, 494 U.S. 652 (1990), that upheld the constitutionality of the federal ban on independent spending by corporations. *See Citizens United*, 558 U.S. at 365-66. Contrary to Plaintiff's argument, *Citizens United* did not question the continuing validity of contribution limits. *See id.*, 558 U.S. at 359 ("Citizens United has not made direct contributions to candidates, and it has not suggested that the Court should reconsider whether contribution limits should be subjected to rigorous First Amendment scrutiny"); *see also Iowa Right to Life*, 717 F.3d at 601 (rejecting characterization of *Beaumont* as "being on 'shaky ground' after *Citizens United*") (citation omitted); *see also Thalheimer v. City of San Diego,* 645 F.3d 1109, 1124-25 (9th Cir. 2011) (finding that *Citizens United* holding does not apply to contribution limits); *Ognibene v. Parkes*, 671 F.3d 174, 184 (2d Cir. 2011) (same).

In particular, *Citizens United* re-affirmed the validity of the "anti-corruption" interest in justifying contribution restrictions. *Id.*, 558 U.S. at 356-57 (explaining, without questioning,

*Buckley's* rationale for upholding contribution limits "in order to ensure against the reality or appearance of corruption," and declining to extend this rationale to independent expenditures only). It also did not question the related "anti-circumvention" rationale, which seeks to prevent the circumvention of other contribution limits and is an additional "valid theory of corruption." *FEC v. Colorado Republican Federal Campaign Comm.,* 533 U.S. 431, 456 (2001); *see also McCutcheon,* 134 S.Ct. at 1444-46 (acknowledging anti-circumvention as legitimate interest, though declining to find that the aggregate contribution limits at issue in that case were closely drawn to that interest); *U.S. v. Danielczvk,* 683 F.3d 611, 618 (4th Cir. 2012) (construing *Citizens United* as preserving anti-corruption and anti-circumvention rationales). [6]

But, even if this Court looks beyond the controlling authority in *Beaumont,* and considers the Kentucky corporate contribution ban under the *Buckley* standard, the law easily meets that test. The ban was first recognized in Kentucky's 1891 Constitution– more than fifteen years before Congress adopted the federal ban, and was clearly intended to further the same anti-corruption goals addressed by Congress and other states during that time. *See, U.S. v. Automobile Workers,* 352 U.S. 567, 570 (1957) (discussing nationwide efforts to curb election abuses in early part of the century) (cited in *Beaumont,* 539 U.S. at 152). The corporate contribution ban has remained an integral part of Kentucky's efforts to combat corruption in state

---

[6] The "anti-distortion" rationale was articulated in *Austin* as a basis for justifying independent spending limitations, and is directed at the "distorting effects of immense aggregations of wealth ...that have little or no correlation to the public's support for the corporation's political ideas." *Id.*. 494 U.S. at 660 (emphasis added). The *Beaumont* Court did not rely on the "anti-distortion" rationale (Pls. Mem. at 10) to justify the federal corporate contribution ban. *See Beaumont.* 539 U.S. at 154-55 (describing governmental interests underlying ban). So, it is of no moment that *Citizens United* did not accept this rationale for independent expenditures. See *Citizens United.* 558 U.S. at 348. Similarly, while *Citizens United* did criticize the "shareholder protection" rationale, it did so only in the context of independent expenditures. See *Danielczvk.* 683 F.3d at 618 n. 3; see also *Sindicato Puertorriqueno de Trabaiadores v. Fortuno.* 699 F.3d 1, 11 (1st Cir. 2012) (cited in Pls. Mem. at 10) (criticizing shareholder protection rationale with respect to independent expenditures of unions).

elections. So much so that despite significant revision to the corporation provisions of the Kentucky Constitution in 2002, the Section 150 ban on corporate contributions remained.[7]

The Sixth Circuit has held that Kentucky's corporate contribution prohibition is "closely drawn" to the goal of combating corruption. *Kentucky Right to Life, Inc. v. Terry*, 108 F.3d 637, 646 (6th Cir. 1997). Similar to the federal corporate contribution ban, it was enacted to address the "problem of corruption of elected representatives through the creation of political debts," and the "importance of the governmental interest in preventing this occurrence has never been doubted." *FEC v. Nat'l Right to Work Committee*, 459 U.S. 197, 208 (1982). The Kentucky law is justified by the important interest in avoiding a threat of corruption or the appearance of corruption through the use of money to extract political favors. As discussed further in Part I.A.3., infra, the law also leaves ample opportunities for corporations to participate in the political process.

> 3.      *The Fact that Corporations Lack an "Indirect" Means of Contributing Administrative Expenses to an Affiliated PAC Does Not Render §150 of the Kentucky Constitution or Its Related Statutes as Unconstitutional.*

Unable to distinguish binding Supreme Court precedents, Plaintiff focuses its challenge on the fact that Kentucky law does not provide an "indirect" means by which a corporation can give financial support to an affiliated PAC. *See* Pls. Mem. at 12-14. But, the Eighth Circuit in *Minnesota Citizens* recently rejected a First Amendment challenge to a statutory scheme that also precludes indirect corporate financial support of a PAC. The court there noted that Minnesota law permits corporations to form PACs while banning all direct contributions, id., 692 F.3d at 879, but made these comments in relation to an "[e]mployee political fund," which is the "only means" for corporations to make contributions under Minnesota law, *id* at 878, citing Minn. Stat.

---

[7] *Citizens' Guide to the Constitution*, Research Report No. 137, KY Legislative Research Commission (June 2013) p. 105, 107.

§ 211B.15(16).  Under that provision, corporations may collect voluntary political contributions from their employees, but are prohibited from "providing anything of monetary value, directly or indirectly, to a candidate or political party, and therefore cannot pay for the administrative expenses of such a [] fund." Dkt. No. 55 in *Minnesota Citizens v. Swanson*, No. 10-cv-02938 (D. Minn.) (state's submission to lower court explaining this provision) (Dennis Aff., Ex. 14); *see also* Minn. Adv. Op. 115, 1991 WL 734371, at *4 (Dec. 9, 1991). In effect, then, the "PAC option" available in Minnesota only allows for a PAC that is "sponsored by an organization in name only, but receives no direct or indirect subsidy from the sponsoring organization." *Minn. Assn. of Commerce & Ind. v. Foley,* 316 N.W.2d 524, 527 (Minn. 1982) (defining term "independent PAC").  But even with that limitation, the Eighth Circuit did not discern a First Amendment violation. *See Minnesota Citizens*, 692 F.3d at 879.

A Minnesota-style PAC option also exists in Kentucky: KRS 121.170(1) requires any political committee other than one affiliated with a candidate or political party to use a name to "reasonably identify to the public the sponsorship and purpose of the committee." To that end, the forms filed with the Registry must clearly identify "the specific purpose, sponsorship, and source from which the committee originates." This means that corporate employees may form PACs using the names of their corporate employers, and such PACs, in fact, have registered in significant numbers with the Registry. *See* Steffen Aff, ¶3 & Ex. 1 (showing 50 of 142 current PACs identified by business/corporate name or other business interest).[8]

In addition, there is nothing to preclude Plaintiff from forming a federal PAC (for which a corporation may permissibly pay administrative expenses) that may then make contributions to Kentucky state and local candidates.  *See* KRS 121.170 and Advisory Opinion 2010-006. Finally, following *Citizens United*, Kentucky permits <u>unlimited</u> corporate spending on

---

[8] See attached Exhibit D:  Affidavit of John R. Steffen.

independent expenditures, as well as <u>unlimited</u> corporate donations to so-called "unauthorized campaign committees. *See* Registry Advisory Opinions 2010-001 & 2010-002. Corporate employees may also volunteer their personal time to political activities, including to a corporate employee PAC. In light of these various avenues for participating in the political process, the mere fact that a Kentucky "PAC option" does not operate in exactly the same manner as under federal law does not render KRS 121.150(20) unconstitutional. *See Thalheimer*, 645 F.3d at 1125-26 (upholding municipal ban on corporate contributions without PAC option, in light of opportunities to engage in independent spending).

B.  The Supreme Court Has Held that Differential Treatment of Corporations and Labor Unions in Campaign Finance Laws Does Not Violate Equal Protection.

Plaintiff also has no chance of success on its equal protection claim. The Supreme Court's decision in *Austin* expressly considered, and rejected, an equal protection challenge to the differential treatment of corporations and labor unions in campaign finance laws. And, the Eighth Circuit, applying Austin, rejected a challenge to Iowa's and Minnesota's corporate contribution bans, which, as in Kentucky and four other states, do not apply to labor unions.

1.  *The Court Should Apply, At Most, Intermediate Scrutiny in Assessing the Content-Neutral Law At Issue.*

As an initial matter, plaintiff erroneously argues (Pls. Mem. at 5) that, for its equal protection claim, Section 150 should be assessed under a "strict scrutiny" standard. But, in the context of campaign finance, courts have applied *Buckley's* "closely drawn" test as a form of "intermediate scrutiny" in assessing both free speech and equal protection challenges to contribution restrictions. Intermediate scrutiny is the First Amendment standard of judicial review for such laws, which are "content-neutral" restrictions that may "impose an incidental burden on speech." *Turner Broadcasting Svs. v. FCC*, 512 U.S. 622, 661-62 (1994) (cited in

*Iowa Right to Life*, 717 F.3d at 602). Applying a more stringent test under the Equal Protection Clause would create an "anomalous result," as a contribution restriction could be deemed to "survive closely drawn scrutiny under the First Amendment, but nevertheless [] violate equal-protection guarantees because of its impingement upon the very same rights." *Wagner v. FEC,* 854 F. Supp. 2d 83, 95 (D.D.C. 2012), overruled on other grounds, 717 F.3d 1007 (D.C. Cir. 2013); see also *Riddle v. Hickenlooper*, 742 F.3d 922, 928 (10th Cir. 2014) (noting uncertainty in standard, but applying "closely drawn" test); *Illinois Liberty PAC v. Madigan*, 902 F. Supp. 2d 1113, 1126 (N.D. 111. 2012) (same). Thus, at most, intermediate scrutiny, and, specifically, the same "closely drawn" test applicable to contribution restrictions under the First Amendment, applies to Plaintiff's equal protection claim in this case.

> 2. *The Supreme Court in Austin Held That Corporations and Unincorporated Associations May Be Treated Differently for Campaign Finance Purposes and the Fact that Kentucky Sets Different Contribution Restrictions on Groups with Varying Purposes Does Not Violate Equal Protection*

Equal protection means that "'all persons similarly situated should be treated alike.'" *Cutshall v. Sundquist,* 193 F.3d 466, 482 (6th Cir.1999) (quoting *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985)); see also *Green Party of Tennessee v. Hargett*, 791 F.3d 684 (6th Cir. 2015). "The Equal Protection Clause does not forbid classifications. It simply keeps governmental decision makers from treating differently persons who are in all relevant respects alike." *Nordinger v. Hahn,* 505 U.S. 1, 10 (1992). The fact that Kentucky sets different contribution restrictions on corporations, as compared to individuals and other types of associations, does not violate equal protection.

Plaintiffs' claim is foreclosed by *Austin*, which rejected an equal-protection claim challenging the differential treatment of corporations and labor unions in campaign finance laws

(there, a ban on independent spending). *See id*, 494 U.S. at 666. The *Austin* Court explained why corporations and unions were not similarly situated under the Equal Protection Clause, emphasizing that, "[w]hereas unincorporated unions, and indeed individuals, may be able to amass large treasuries, they do so without the significant state-conferred advantages of the corporate structure; corporations are 'by far the most prominent example of entities that enjoy legal advantages enhancing their ability to accumulate wealth.'" *Id.* at 665 (citation omitted). The Court also noted that, unlike corporations, unions are subject to special rules that prohibit them from making political expenditures with which their members disagree. *Id.*, citing *Abood v. Detroit Bd. of Ed.,* 431 U.S. 209 (1977). Given these differences, the Court held that the "State's decision to regulate only corporations is precisely tailored to serve the compelling state interest of eliminating from the political process the corrosive effect of political 'war chests' amassed with the aid of the legal advantages given to corporations." *Id* at 666. Although *Citizens United* later invalidated a ban on independent corporate expenditures under the First Amendment, it did not overrule *Austin*'s equal protection holding, which remains binding on this Court. *See Iowa Right to Life*, 717 F.3d at 603; *Minnesota Citizens*, 692 F.3d at 879. [9]

But even if the "closely drawn" test were separately applied, the fact that Kentucky law bans contributions by corporations, while applying different rules to groups and associations that are <u>not</u> protected by the same legal advantages as a corporation, presents no equal protection

---

[9] Plaintiff's reliance on *Dallman v. Ritter*, 225 P.3d 610 (Colo. 2010) (see Pls. Mem. at 7-8), is also misplaced. In that case, the Colorado Supreme Court found labor unions and for-profit entities to be similarly situated for purposes of determining "how [they] are affected by the [subject] law," namely, public contracting rules. *Id* at 634. The court found the ban on union contributions to be unrelated to the stated purpose of preventing "pay-to-play" schemes because any particular union would be chosen by employee vote, meaning that the "State has absolutely no choice over which union to award a contract." *Id* at 633, 635. This factor plays no role in the context of contributions to candidates, and, indeed, the *Dallman* court acknowledged that the "stated purpose of [the law] is legitimate in other contexts." Id. at 635; compare also *Opnibene*. 671 F.3d at 191-93 (upholding differential treatment of business entities as compared to labor organizations, in the context of pay-to-play legislation).

difficulty, as it merely reflects a "judgment by [the legislature] that [] entities [with] differing structures and purposes ...may require different forms of regulation in order to protect the integrity of the electoral process." *Cal. Med. Ass'n v. FEC*, 453 U.S. 182, 201 (1981). The Supreme Court has repeatedly recognized that the "special characteristics of the corporate structure require particularly careful regulation," *Beaumont*, 539 U.S. at 156, quoting *National Right to Work*, 459 U.S. at 209-10, and that corporate contributions may be banned as a "prophylactic" measure without precise distinctions based on the "details or corporate form or the affluence of particular corporations," *id.* at 157. Such "special characteristics" include the "special advantages [accorded to corporations]—such as limited liability, perpetual life, and favorable treatment of the accumulation and distribution of assets—that enhance their ability to attract capital." *Id.* at 154 (citation omitted). The fact that the state has elected not to <u>also</u> ban contributions from other dissimilar entities that do not exhibit the special characteristics of corporations does not violate equal protection. This approach is also "closely drawn" to the goal of combatting corruption, since the state has addressed what is "by far the most prominent example of entities that enjoy legal advantages enhancing their ability to accumulate wealth," *Austin* 494 U.S. at 665 (citation omitted), without foreclosing its ability to do more.

Put another way, Plaintiff's argument boils down to the view that Section 150 of the Kentucky Constitution is merely "underinclusive" in its exclusion of labor unions and other types of business entities from its scope. But, "a statute is not invalid under the Constitution because it might have gone farther than it did." *Buckley*, 424 U.S. at 105 (citation omitted). And, the purpose of the underinclusiveness inquiry is to "ensure that the proffered state interest actually underlies the law." *Austin,* 494 U.S. at 677 (Brennan, J., concurring); *see also Ognibene,* 671 F.3d at 191 (fact that state "has chosen to focus on one aspect of *quid pro quo* corruption, rather

18

than every conceivable instance, does not render its rationale a 'challenge to the credulous'")

(citation omitted).  Limited liability companies (LLCs) are a relatively new type of business

entity distinct from a corporation. *See* KRS Chapter 275.001 - Kentucky's Limited Liability

Company Act, *compare to* KRS Chapter 271B.1-010 – Kentucky Business Corporation Act.

LLCs were only recognized as a business entity in Kentucky beginning in 1994.  *See* KRS

275.001.  It is not as if any LLC may make a political contribution in Kentucky, only those that

meet the definition of contributing organization in KRS 121.015(4).  Funds contributed by a

contributing organization must be derived solely from within the group, and any contribution

made by an LLC acting as a contributing organization in excess of $100 must be reported by the

LLC to the Registry.  Given the decades-old rationales for the corporate ban, nothing about the

omission of other types of entities from Kentucky law undermines the validity of those

rationales.[10]

## II.   A PRELIMINARY INJUNCTION WOULD HARM THE PUBLIC INTEREST BECAUSE IT WOULD OVERTURN A DECADES-OLD CAMPAIGN FINANCE FRAMEWORK DESIGNED TO ENSURE TRANSPARENT AND FAIR ELECTIONS.

Plaintiff has not made a particularized showing of harm, stating only that the "ongoing

deprivation of Plaintiff's constitutional rights constitutes irreparable harm." Pls. Mem. at 6.  This

fails to satisfy the requirement that, "[i]n each case, courts 'must balance the competing claims of

injury and must consider the effect on each party of the granting or withholding of the requested

relief.'"  *Winter*, 555 U.S. at 24 (citation omitted).  Such requirements hold true in free speech

cases.  *See McNeilly v. Land*, 684 F.3d 611, 621 (6th Cir. 2012) ("Because [Plaintiff] does not

---

[10] Indeed, at least four other states, in addition to Iowa and Minnesota, do not include unions or other similar entities in their ban (or limit) on corporate contributions. See Iowa Code § 68A.503; Mass. Gen. Laws Ch. 55, §8; Minn. Stat. § 211B.15; Miss. Code § 97-13-15 (limit); Mont. Code Ann. § 13-35-227; W. Va. Code § 3-8-8.

have a likelihood of success on the merits . . . his argument that he is irreparably harmed by the deprivation of his First Amendment rights also fails.") (citation omitted, alteration in original); *Holmes v. FEC*, 71 F.Supp.3d 178, at 188 (D.D.C. 2014) (denying preliminary injunction in case challenging contribution limits, based on balance of equities); *Rufer v. FEC*, 64 F.Supp.3d 195, 205-206 (D.D.C. 2014) (same).

Here, the balance of equities clearly favors denying the relief requested. Plaintiff's' claims are "in tension with [] years of Supreme Court jurisprudence upholding contribution limits [here, the corporate contribution ban]." *Rufer*, 64 F.Supp.3d 195, 205-206; *see also McNeilly v. Land*, 684 F.3d at 621 (where plaintiff moved to enjoin defendant's enforcement of contribution limits less than three months before general election, "district court did not err in concluding 'there will be significant harm to the defendant upon issuance of a preliminary injunction'"). Kentucky voters elect statewide public officials in just over two (2) months. To suddenly permit corporate contributions where none have been allowed for decades will cause chaos for current candidates and the general public.

Plaintiff asks this Court to enjoin enforcement of a contribution ban that has been in existence since 1891. This would upset settled expectations with respect to campaign finance laws, and effectively allow unlimited campaign contributions from corporations—all "based on an yet untested legal theory," and in contravention of the purpose of a preliminary injunction to "preserve the relative positions of the parties until a trial on the merits can be held." *Rufer*, 65 F.Supp.3d at 206; *see also Lair v. Bullock*, 697 F.3d 1200, 1215 (9th Cir. 2012) (granting the state's request to stay injunction declaring contribution limit unconstitutional, in light of "deep public interest in honest and fair elections").

Disclosure of the true source of funds contributed to political candidates provides Kentucky voters with an important means to determine whether campaign money ultimately influences the decisions made by a public officer. However, as a 501(c)(4) non-profit corporation, Plaintiff's donors are exempt from public disclosure. *NAACP v. Alabama*, 357 U.S. 449 (1958). This only reinforces the fact that this case should proceed to full resolution on the merits before any injunction is issued. Moreover, the "presumption of constitutionality" that attaches to any statute is "an equity to be considered in favor of [the government]." *Holmes*, 71 F.Supp.3d at 188, quoting *Bowen v. Kendrick*, 483 U.S. 1304, 1304 (1987).

Plaintiff specifically requests this Court to declare as unconstitutional the entirety of Kentucky's campaign finance law as it relates to corporations, dating back to the 1891 Constitution. Because Plaintiff fails to show a likelihood of success on its claims, and in light of the public interest in preserving transparent elections, the Plaintiff's motion should be denied.

## CONCLUSION

For the above reasons, Defendants respectfully requests that this Court DENY Plaintiff's motion for preliminary injunction.

DATED this 31st day of August, 2015.

Respectfully submitted,
*/s/ Emily Dennis*

Emily Dennis
General Counsel
Kentucky Registry of Election Finance
140 Walnut Street
Frankfort, Kentucky 40601
(502) 573-2226 (phone)
(502) 573-5622 (fax)
Emily.Dennis@ky.gov – e-mail
*COUNSEL FOR DEFENDANTS, Craig C. Dilger,*
*Chairman, and John Steffen, Executive Director,*
*Kentucky Registry of Election Finance*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2015, I electronically filed the foregoing document with the Clerk of the Court by using the CM/EFC system, which will send a notice of electronic filing to the Hon. Jason M. Nemes [email address: jnemes@fmdlegal.com]; Hon. James M. Manley [email address: jmanley@goldwaterinstitute.org]; and the Hon. Jared H. Blanchard [email address: jblanchard@goldwaterinstitute.org].

*/s/Emily Dennis*

Emily Dennis
COUNSEL FOR DEFENDANTS

## INDEX OF EXHIBITS

**Exhibit A**:    Electronic Articles of Incorporation for Protect My Check, Inc., filed September 15, 2014 with the Florida Secretary of State's Office

**Exhibit B**:    Certificate of Authority as Foreign Business Entity filed April 15, 2014 with the Kentucky Secretary of State's Office

**Exhibit C**:    Affidavit of Emily Dennis

**Exhibit D**:    Affidavit of John R. Steffen