UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

|  |  |  |
|---|---|---|
| PROTECT MY CHECK, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 15-42-GFVT |
| | ) | |
| V. | ) | |
| | ) | **OPINION** |
| CRAIG C. DILGER, Chairman, | ) | **&** |
| Kentucky Registry of Election Finance, | ) | **ORDER** |
| in his official capacity; an | ) | |
| JOHN STEFFEN, Executive Dir., | ) | |
| Kentucky | ) | |
| Registry of Election Finance, in his | ) | |
| official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**\*\*\*   \*\*\*   \*\*\*   \*\*\***

Kentucky's campaign finance law includes certain limitations on corporate contributions that do not similarly apply to contributions from unincorporated groups, including unions and LLC's.  Plaintiff, Protect My Check, Inc. (PMC) is a non-profit corporation that supports local legislators, workers, and employers seeking to expand employee rights and create jobs through local right-to-work protections in states that lack such protections.  [R. 19-2, ¶¶ 5-6.]  According to PMC, Section 150 of the Kentucky Constitution prohibits corporate entities such as Protect My Check from making either direct or indirect contributions to political candidates, and but for this ban PMC would contribute to candidates in Kentucky who share its goals.  [R. 19-1 at 7.]  PMC alleges that this ban violates its constitutional rights under the First Amendment of the United States Constitution, and that it also constitutes disparate treatment of corporations in

violation of the Fourteenth Amendment since the ban does not similarly apply to unions or LLCs.  The Court has federal question jurisdiction over this matter pursuant to U.S.C. § 1331, as the claims arise under the United States Constitution.  [R. 27.]  Presently before the Court is PMC's Motion for a Preliminary Injunction requesting the Court to declare Section 150 of the Kentucky Constitution and certain related statutes and regulations unconstitutional, and to enjoin Defendants from enforcing these laws to the extent that they prohibit PMC from contributing to political candidates, political action committees (PACs), or party committees.  [R. 19-1.]  For the reasons explained below, the Motion is GRANTED in PART.

## I

PMC is a § 501(c)(4) corporation organized in Florida and authorized to do business in Kentucky.  As such, it seeks to expand employee rights through promoting legislation for "right to work" protections in the states that lack such protections through both direct and indirect contributions to candidates for state and local offices; contributions to organizations, parties, and committees that support such candidates; and by establishing, financing, maintaining, and controlling a PAC to make such contributions.  [R. 1 ¶ 8; R. 19-2.]  Section 150 of the Kentucky Constitution prohibits corporations from using money or other things of value to influence elections, stating that corporations may not "directly or indirectly, offer, promise or give, or [] authorize, directly or indirectly, any person to offer, promise or give any money or any thing of value to influence the result of any election in this State, or the vote of any voter authorized to vote therein."  Ky. Const. § 150.  Corporations that violate this prohibition forfeit the right to do business in Kentucky, and corporations or corporate officers and employees who knowingly violate it can be guilty of a Class D felony and fined up to $10,000.  *Id.*; Ky. Rev. Stat. §121.990. A related implementing statute, KRS 121.025, provides in part: "No corporation authorized to do

business in this state … and no officer or agent of a corporation on its behalf, shall contribute, either directly or indirectly, any money, service, or other thing of value towards the nomination or election of any state, county, city, or district officer in this state….”  Ky. Rev. Stat. § 121.025.

Other related statutes at issue include KRS 121.150(2), which prohibits political candidates, committees, contributing organizations or anyone on their behalf from knowingly accepting a contribution from a corporation, directly or indirectly.  Ky. Rev. Stat. § 121.50(20). KRS 121.035 similarly prohibits any corporation or its officers, agents, or employees from disbursing, distributing, paying out, or even handling any money or any thing of value that would be used “or employed in any way for the purpose of aiding, assisting, or advancing any candidate for public office in this state in any way whatever.”  Ky. Rev. Stat. § 121.035(2).  The same statute also prohibits corporations or their officers or employees from giving, furnishing, or afterwards reimbursing or compensating in any way any person who has given any money, privilege, or favor to any political or quasi-political organization for the purpose of assisting any candidate for public office in Kentucky.  Ky. Rev. Stat. § 121.035(1).

PMC contends that these laws (collectively referred to as “Section 150”) violate its rights to free speech and association under the First Amendment to the federal Constitution, and that but for this ban, PMC would contribute to candidates, parties, and political committees to support candidates who share its goals.  [R. 19-1 at 7.]  Defendants, however, maintain that these laws have been in place since 1891 and were enacted due to concern about the undue corporate influence of railroad corporations following the Civil War that bribed Kentucky lawmakers to give them favorable treatment.  [R. 20 at 7.]  Defendants further point out that several other implementing statutes mitigate some of PMC’s concerns.  For instance, KRS 121.035(3) states that “Nothing in this chapter shall be construed to prohibit a not-for-profit corporation, which

does not derive a substantial portion of its revenue from for-profit corporations, from making independent expenditures."  [R. 20 at 10-11 (quoting Ky. Rev. Stat. § 121.035(3)).]  Defendants also point to KRS 121.150(21) which allows a corporation to "administer its permanent committee insofar as its actions can be deemed not to influence an election as prohibited by KRS 121.025," and note that the Attorney General has construed such language as requiring such permanent committees (also known as political action committees or PACs) to reimburse any expenditure made by a host corporation in administering the PAC.  [R. 20 at 11.]   Moreover, according to Defendants, owners of corporations may make in-kind contributions to a candidate or PAC but must reimburse any actual costs from doing so to the corporation from the owner's personal funds, and a candidate cannot accept the use of a corporation's assets unless the fair market value is billed to the campaign and paid for with campaign funds.  32 KAR 2:170.

Defendants also state that various Advisory Opinions have determined that corporations may form unauthorized campaign committees and may contribute to such committees in unlimited amounts in order to make independent expenditures only, and they may form state PACs to receive contributions from permissible sources and make expenditures from those PACs to support or oppose state candidates.  [R. 20 at 12 (citing Advisory Opinions 2010-001 and 2010-002).]   Additionally, corporations in Kentucky may form federal PACs which can then make contributions to state and local candidates.  [*Id.* (citing Advisory Opinion 2010-006).]

PMC, however, maintains that because unions and LLCs are not under similar restrictions, such disparate treatment violates the federal Fourteenth Amendment's Equal Protection Clause.  Accordingly, PMC moves for declaratory and injunctive relief, requesting that the Court declare the following laws unconstitutional and enjoin Defendants from enforcing them to the extent they prohibit PMC from contributing to political candidates, PACs, or party

committees: Section 150 of the Kentucky Constitution, KRS 121.025, KRS 121.035, KRS 121.150(20), and 32 Ky. Admin. Regs. 2:170.  PMC does not seek unrestricted ability to engage in unlimited campaign contributions, but only requests that it be treated the same as LLCs and unions.  Defendants assert that these laws should be upheld because the prohibition on corporate contributions "matches the state's objective to prevent actual and apparent *quid pro quo* corruption in elections."  [R. 20 at 3.]

During oral argument, the parties agreed that despite the broad language of Section 150, Kentucky's current legal framework allows PMC and similar groups to make independent expenditures under KRS 121.035(3). Tr. (Oral Arguments Feb. 26, 2016) at 6-8.  The present dispute therefore concerns Kentucky's effectual ban on direct contributions by corporations. Also during oral argument, counsel for Defendants conceded that a complete ban on direct contributions that applied to corporations but not to LLCs and unions could not survive strict scrutiny for purposes of equal protection, and that LLCs and unions should be treated the same as corporations concerning their ability to form and administer PACs that contribute to state-level candidates.  Tr. at 55-61.  Thus, the remaining dispute now focuses on whether Kentucky's ban on direct corporate contributions violates the free speech rights of corporations, even when the ban is also applied to LLCs and unions, and even if it allows all of those groups to administer state PACs and contribute to state-level candidates through those PACs.

## II

### A

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington–Fayette Urban Cnty. Gov't,* 305 F.3d 566, 573 (6th Cir. 2002) (citing

*Leary v. Daeschner,* 228 F.3d 729, 736 (6th Cir. 2000)).  In reviewing a motion for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65, district courts must consider (1) whether there is a likelihood of success on the merits of the plaintiff's claim; (2) whether the plaintiff will suffer irreparable harm if the injunction is not granted; (3) whether others would be harmed by granting the injunction; and (4) whether the public good is served by issuing the injunction.  *Leary,* 228 F.3d at 736 (citing *McPherson v. Michigan High Sch. Athletic Ass'n,* 119 F.3d 453, 459 (6th Cir. 1997) (en banc)).  "These factors are to be balanced against one another and should not be considered prerequisites to the grant of a preliminary injunction."  *Id.* (citing *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.,* 163 F.3d 341, 347 (6th Cir.1998)).

With that said, "'[w]hen a party seeks a preliminary injunction on the basis of a potential violation of the First Amendment, the likelihood of success on the merits often will be the determinative factor.'"  *Jones v. Caruso,* 569 F.3d 258, 265–66 (6th Cir. 2009) (quoting *Connection Distrib. Co. v. Reno,* 154 F.3d 281, 288 (6th Cir.1998)).  In other words, when a constitutional violation is alleged, especially a First Amendment violation, the factors concerning harm and the public interest can be addressed only after resolving the crucial determination of "whether the [regulation] at issue is likely to be found constitutional.'"  *Id.* (quoting *Connection Distrib. Co.,* 154 F.3d at 288); *see also Congregation Lubavitch v. City of Cincinnati,* 923 F.2d 458, 460 (6th Cir. 1991).  Accordingly, the resolution of the present case will turn on the question of whether PMC is likely to succeed on the merits of its claim that Kentucky's complete ban on direct contributions by corporations, even despite allowing them to contribute through a state PAC, violates the First and Fourteenth Amendments of the federal Constitution.

**B**

The parties agreed during oral argument that Defendants' concession largely resolved PMC's Equal Protection Claim and that as between these particular parties, PMC's only remaining claim before the Court is that Kentucky's complete ban on direct corporate contributions violates the First Amendment.  Before addressing PMC's First Amendment claim, however, the procedural posture of this case requires some discussion of PMC's integrally related Fourteenth Amendment claim.  PMC contends that Defendants must justify the disparate treatment of banning corporations' political contributions while allowing LLCs and unions to make such contributions.  [R. 19-1 at 10-11.]  Although the stated reason for the ban is to prevent corruption, PMC challenges the reasoning that unions and LLCs can "contribute thousands of dollars to political candidates with no threat of corruption, but a single dollar from a corporation would destroy public confidence in democracy."  [*Id*. at 11.]

PMC contends that "[w]hatever valid campaign finance limits apply to unions and LLCs should apply to corporations and vice versa," [R. 19-1 at 15], a point which Defendants now concede.  Tr. at 58-63.  During oral argument, however, Defendants admitted these groups should all be treated the same in this context, but also maintain that although Section 150 was enacted before some organizations, such as LLCs, came into existence, later implementing statutes now take that into account.  For instance, Defendants point to KRS 446.010(11), under which the term "corporation" may be applied to any corporation, company, partnership, joint stock company or association.  Tr. (Oral Arguments Feb. 26, 2016) at 54, 59.  According to Defendants, such broad language also encompasses LLCs and unions.  *Id*.  Defense counsel also conceded that all three groups should be treated equally with regard to exercising a PAC option.  *Id*. at 58-59.  Thus, as applied, Defendants acknowledge that the historic distinctions between

them would likely not survive scrutiny under the Fourteenth Amendment, and that the ban on direct contributions should apply equally to LLCs and unions as well as corporations.  *Id*. at 54-61.  This concession on the part of Defendants moots the controversy concerning PMC's equal protection claim.  *See id*.

The Court agrees with the parties that such arbitrary distinctions could not survive strict scrutiny.  However, the alleged unequal treatment of corporations from entities such as LLCs that has occurred up to this point still requires some analysis because, despite Defendants' concessions, the Court is unaware of any actual change in the existing law or its application that would prevent such disparity from occurring again in the future.  In other words, defense counsel's agreement that corporations, LLCs, and unions should all be treated the same in the context of direct contributions does not necessarily alter the way the law is written or applied. *See Johnson v. City of Cincinnati*, 310 F.3d 484, 490 (6th Cir. 2002) (quoting *City of Mesquite v. Aladdin's Castle, Inc*., 455 U.S. 283, 289 (1982) ("voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice")); *see also Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979) (quoting other sources) (voluntary cessation may not moot a controversy if there remains a reasonable expectation that the alleged violation will recur or interim events have not completely eradicated its effects).

"The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person . . . against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (quoting *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445 (1923) (internal quotation marks omitted)).  "The Equal Protection Clause directs that all persons similarly circumstanced shall be treated alike."  *Plyler v. Doe*, 457

U.S. 202, 216 (1982) (citation and internal quotation marks omitted).  Classifications are "presumptively invidious" where they "impinge upon the exercise of a 'fundamental right.'"  *Id.* at 216-17.  Political speech is a fundamental right, to which corporations are entitled.  *Citizens United v. Federal Election Com'n*, 558 U.S. 310, 342-43 (2010) (collecting cases).

When equal protection rights are called into question, especially in the realm of political speech, strict scrutiny applies.  *See Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Michigan Gaming Control Bd.*, 172 F.3d 397, 410 (6th Cir. 1999).  "Because the right to engage in political expression is fundamental to our constitutional system, statutory classifications impinging upon that right must be narrowly tailored to serve a compelling governmental interest."  *Austin v. Michigan Chamber of Commerce*, 494 U.S. 652, 666 (1990) *overruled on other grounds by Citizens United*, 558 U.S. 310; *see also Minnesota Citizens Concerned for Life v. Swanson*, 692 F.3d 864, 879-80 (8th Cir. 2012) (explaining that *Citizens United* did not overrule the equal protection analysis in *Austin* and affirming the application of strict scrutiny to regulations on contributions that were imposed on corporations but were not equally imposed on unions).  Here, the parties agree that strict scrutiny applies to contribution bans with equal protection implications, such as those at issue here.

Because "the First Amendment stands against attempts to disfavor certain subjects or viewpoints," it also prohibits "restrictions distinguishing among different speakers, allowing speech by some but not others."  *Citizens United*, 558 U.S. at 340 (internal citations and quotation marks omitted).  "Speech restrictions based on the identity of the speaker are all too often simply a means to control content," and therefore "the Government may commit a constitutional wrong when by law it identifies certain preferred speakers . . . .  The First Amendment protects speech and speaker, and the ideas that flow from each."  *Id.* at 340-41.

Therefore, if Kentucky's ban on corporate political contributions treats LLCs and unions differently from corporations such as PMC, the State has the burden of demonstrating "that its classification has been precisely tailored to serve a compelling governmental interest." *Plyler*, 457 U.S. at 217.

Accordingly, to prevail on PMC's equal protection claim, Defendants must justify the disparate treatment at issue. According to PMC, Kentucky's contribution ban involves a total prohibition on direct corporate contributions and allegedly prevents corporate formation of PACs, but at the same time allows unions and LLCs to form PACs and contribute up to the ordinary PAC limits. Defendants, however, have not sufficiently explained why corporations should be treated differently from unions or LLCs. During oral argument, Defendants further conceded that there are no relevant differences between LLCs and corporations in this context that would justify such disparate treatment. Tr. at 53-59. Although Defendants suggest the threat of corruption might be greater with regard to corporations than for unions or LLCs, the parties agree that under strict scrutiny analysis Defendants must show a causal link between the disparate treatment and preventing corruption, but so far they have not done so. This is not to say there could never be a valid reason for treating corporations differently than unions or LLCs, but so far Defendants have not presented one, and during oral argument defense counsel conceded that the ban should apply equally to all three groups. Tr. at 54-55, 59-61. Therefore, PMC has demonstrated a likelihood of success on the merits of its Fourteenth Amendment claim.

Thus, to the extent that Section 150 of the Kentucky Constitution and its implementing statutes and regulations treat corporations differently from LLCs and unions by placing more restrictions on their political speech, they are overbroad and unconstitutional under the Equal

Protection Clause of the Fourteenth Amendment.[1]  The question remains, however, whether this ban offends the First Amendment rights to free speech of these organizations.

C

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech."  U.S. Const. Amend. 1.  Political speech concerning candidates for public office is "at the core of our First Amendment freedoms."  *Republican Party of Minnesota v. White*, 536 U.S. 765, 774 (2002) (internal citation and quotation marks omitted).  "Speech is an essential mechanism of democracy, for it is the means to hold officials accountable to the people . . . .  The First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office."  *Citizens United*, 558 U.S. 310 at 339-40 (internal citations and quotation marks omitted).  As explained above, "First Amendment protection extends to corporations," and "political speech does not lose [such] protection simply because its source is a corporation."  *Id*. at 342 (collecting cases) (internal citations and quotation marks omitted).  The Supreme Court has "rejected the argument that political speech of corporations or other associations should be treated differently under the First Amendment simply because such associations are not natural persons."  *Id*. at 343 (citation omitted.

Citing the above principles, PMC contends that the protected political speech of corporations includes the right to make direct contributions to candidates as well as independent expenditures.  [R. 19-1 at 5.]  According to PMC, the reasoning in *Citizens United* that struck down the federal ban on independent corporate expenditures should also be applied to strike down Kentucky's ban on direct contributions by corporations.  At the very least, PMC argues that because the Supreme Court has never upheld bans on direct contributions unless the

---

[1] If, however, the statutes defining corporations are applied in a way that includes LLCs, and if KRS 446.010(11) is applied to include unions, as Defendants maintain, then the ban does not offend Equal Protection principles.

regulation at issue provided for indirect contributions through a PAC option, Kentucky's ban should be struck down because it lacks a similar option. [*Id.* at 13-14.] In response, Defendants argue that because *Citizens United* only addressed independent expenditures, the Supreme Court decision in *Federal Election Com'n v. Beaumont*, 539 U.S. 146 (2003), which upheld the federal ban on direct contributions from corporations, remains controlling. [R. 20 at 2, 10-11.] Defendants further maintain that Kentucky does allow for a PAC option [*id.* at 12], and conceded during oral argument that the ban on direct contributions, as well as the regulations permitting PAC options, should apply to unions and LLCs in the same way as to corporations. Tr. at 61.[2]

Defendants' apparent concessions during oral arguments may have resolved some of PMC's concerns, such as conceding that PMC can utilize a state PAC option. However, the language of Section 150 still calls into question its facial validity even if Defendants' application of it through Advisory Opinions recognizes the findings of recent Supreme Court decisions issued long after Section 150 was enacted. For instance, PMC contends that the PAC option which Defendants say is permitted by KRS 121.170 contradicts the plain language of Section 150. [R. 23 at 14.] In particular, PMC maintains that although the PAC option has been described as "the essential constitutional minimum," even if Kentucky permits such an option, its ban on direct contributions still violates PMC's First Amendment rights. [R. 23 at 13 (citing *McConnell v. Federal Election Com'n*, 540 U.S. 93, 203 (2003); *see also* Tr. at 72-73.]

---

[2] Much of PMC's argument for striking down Kentucky's law on First Amendment grounds is integrally tied to its Fourteenth Amendment claim that the ban on direct corporate contributions cannot be justified on the basis of reducing corruption "when all other similarly situated groups can make [direct] contributions without any apparent threat of corruption." [R. 19-1 at 13.] This is a point which Defendants conceded during oral argument. To the extent the Court has already found that such unequal treatment violates the Fourteenth Amendment, we need not revisit those arguments. As explained above, corporations should be treated the same as LLCs and unions in this context, but whether a ban on direct contributions is constitutionally permissible at all, even if applied equally to similarly situated groups, is a different question under the First Amendment.

Given the parties' dispute over which cases are controlling in this matter, the Court finds it useful to clarify at the outset what is clearly permissible under the Constitution.  First, as the parties agree, we know that since the Supreme Court decision in *Citizens United*, prohibitions on independent expenditures by corporations are generally considered unconstitutional violations of free speech rights.  *See* 558 U.S. at 365-66 (overruling *Austin*, 494 U.S. 652, and part of *McConnell*, 540 U.S. 93, to the extent that those cases upheld restrictions on corporate independent expenditures).  Second, a point which the parties do not appear to dispute, is that certain *limits* on direct contributions *are* generally permissible.  *See, e.g., McCutcheon v. Federal Election Com'n*, 134 S.Ct. 1434, 1442 (2014) (noting that Supreme Court has previously upheld base limits to campaign contributions); *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, 131 S.Ct. 2806, 2826-27 (2011) (affirming limits on campaign *contributions* even though bans on independent expenditures are not permissible); *SpeechNow.org v. Federal Election Com'n*, 59 F.3d 686, 696 (D.C.Cir. 2010) (finding the same).  A related point is that certain restrictions on the amounts and forms of campaign contributions, as well as reporting and disclosure requirements, are generally upheld by courts as long as they meet the appropriate standard of review.  *See, e.g., SpeechNow.org*, 59 F.3d at 696 (upholding organizational and reporting requirements on campaign contributions because the "Supreme Court has consistently upheld [such] requirements against facial challenges"); *McCutcheon*, 134 S. Ct. at 1459 (upholding disclosure requirements on campaign contributions); *Citizens United*, 558 U.S. at 366-71 (upholding disclosure and disclaimer requirements).

Third, the relevant case law indicates that complete bans on direct contributions are generally upheld in situations where the corporation still can participate in the political process

through a PAC or a separate segregated fund (SSF).[3]  *See, e.g., Beaumont*, 539 U.S. at 163 ("The PAC option allows corporate political participation without the temptation to use corporate funds for political influence. . . "); *id*. at 149 (upholding ban on direct contributions when the prohibition did not also "forbid the establishment, administration, and solicitation of contributions to a separate segregated fund to be utilized for political purposes"); *Buckley v. Valeo*, 424 U.S. 1, 29 n.31 (1976) (*per curiam*) (upholding limits on direct contributions while noting that corporations and labor unions could still participate through SSFs and that "[c]orporate and union resources without limitation may be employed to administer these [PAC] funds and to solicit contributions from employees, stockholders, and union members."); *Kentucky Right to Life, Inc. v. Terry*, 108 F.3d 637, 645 (6th Cir. 1997) (upholding ban on direct contributions but noting "the statute permitted corporations to make limited campaign contributions from separate segregated funds solicited explicitly for that purpose").

     Given this framework, the primary question before the Court is whether a *complete* ban on direct contributions by corporations is constitutional in the aftermath of *Citizens United*.  The parties agree that *Citizens United* addressed the question of corporate independent expenditures, but PMC contends that its reasoning can and should be extended to bans on direct contributions as well because "[i]ndependent expenditures are not a substitute for direct candidate contributions."  [R. 23 at 11.]  An integrally related question is whether having a PAC option necessarily makes the ban on direct contributions permissible, or whether even a ban with a PAC option impermissibly infringes on a corporation's freedom of speech.

---

[3] SSFs are political committees established and administered by corporations and labor unions. They can only solicit contributions from individuals associated with a connected or sponsoring organization.

In addressing this issue, the parties agree on the appropriate standard of review the Court should apply.  Tr. at 9-12.  Generally, "[l]aws that burden political speech are subject to strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest."  *Citizens United*, 558 U.S. at 340 (citation omitted) (applying strict scrutiny to regulations of corporate independent expenditures). However, the Supreme Court has distinguished direct contributions from independent expenditures, finding that "contribution limits impose a lesser restraint on political speech" and therefore require "a lesser but still rigorous standard of review."  *McCutcheon*, 134 S.Ct. at 1444 (quoting *Buckley*, 424 U.S. at 29) (internal quotation marks omitted).  Under this standard, regulations on direct contributions "may be sustained if the State demonstrates a sufficiently important interest and employs means closely drawn to avoid unnecessary abridgment of associational freedoms."  *Id.* (quoting *Buckley*, 424 U.S. at 25).

The parties agree that this standard should be applied to PMC's First Amendment claim, and that this is a less rigorous standard than the strict scrutiny applied to the Equal Protection claim discussed above.  Tr. at 9-12; *see also Wagner v. Federal Election Com'n*, 793 F.3d 1, 6 (D.C. Cir. 2015) ("both limits and bans on contributions are subject to the same 'closely drawn' standard") (citing *Beaumont*, 539 U.S. at 161-63); *Ognibene v. Parkes*, 671 F.3d 174, 182-83 (2d Cir. 2011) (explaining that while strict scrutiny applies to restraints on campaign expenditures, both limits and bans on campaign contributions "are more leniently reviewed" and thus "are permissible as long as they are closely drawn to address a sufficiently important state interest") (collecting cases).  Because it is clear that corporations are also entitled to freedom of speech, including political speech, the restriction at issue here is an "abridgement" of those

rights. *McCutcheon*, 134 S.Ct. at 1444. The more pertinent question is whether it is an "unnecessary abridgement" in this context. *See id.*

**1**

Despite the protections on political speech, the government can restrict such speech in order to solve certain problems. *McCutcheon*, 134 S.Ct. at 1441. When presented with a challenged restriction to political speech, the Court's first inquiry should be whether the government's stated reason for the restriction is a valid one. In other words, we must first determine whether the problem that the government is trying to solve is an interest that sufficiently justifies the restriction on speech. *Id.* at 1444. Here, Kentucky's stated justification for the ban on direct corporate contributions is to prevent "actual and apparent *quid pro quo* corruption in elections." [R. 20 at 3.] This is a legitimate problem for state governments to solve, and it is an interest compelling enough to justify certain restrictions. *McCutcheon*, 134 S.Ct. at 1450.

Defendants' primary support for the constitutionality of Kentucky's ban on direct contributions is *FEC v. Beaumont*, 539 U.S. 146 (2003), which upheld the federal ban on direct corporate contributions. PMC contends that because of *Citizens United*, the reasoning in *Beaumont* no longer applies to the present situation. *Citizens United* overruled the part of *Austin* addressing bans on independent expenditures, and in doing so also overruled certain previous rationales used for justifying restrictions on political speech. *See* 558 U.S. at 348-65.

Historically there have been four main reasons for bans on corporate contributions and expenditures – the anti-distortion rationale, the anti-corruption interest, a shareholder-protection interest, and an anti-circumvention rationale. *Citizens United* invalidated the anti-distortion and the shareholder-protection interests, affirmatively upheld the anti-corruption rationale, and did

16

not address the anti-circumvention rationale.  *See* 558 U.S. at 348-66; *see also United States v. Danielczyk*, 683 F.3d 611, 618 (4th Cir. 2012) (construing *Citizens United* as preserving anti-corruption and anti-circumvention rationales while rejecting the other two).

 *Citizens United* specifically rejected the anti-distortion rationale used in *Austin,* which is based on the idea that corporations have an ability to amass great wealth and influence the economy, and therefore should be regulated more heavily in an attempt to "equalize" the relative financial ability of such organizations to influence public discussion.  In doing so, the Court reiterated prior precedent finding that "political speech cannot be limited based on a speaker's wealth," which is connected to the First Amendment rule prohibiting the suppression of political speech "based on the speaker's identity."  558 U.S. at 350-51.  Thus, the government cannot "ban political speech simply because the speaker is an association that has taken on the corporate form."  *Id*. at 349.  Based on this reasoning, the Court overruled *Austin's* holding which was primarily based on this anti-distortion rationale, finding that such reasoning "interferes with the 'open marketplace' of ideas protected by the First Amendment."  *Id*. at 354 (quoting *New York State Bd. of Elections v. Lopez Torres*, 552 U.S. 196, 208 (2008)); *see also Arizona Free Enterprise Club*, 131 S.Ct. at 2825-26 (explaining that "leveling the playing field" is not a legitimate reason for government to place burdens on political speech).

 The *Citizens United* Court also rejected the shareholder-protection interest because such abuses can be corrected by shareholders themselves "through the procedures of corporate democracy," and there are other less restrictive regulatory mechanisms that can solve this problem.  558 U.S. at 361-62 (quoting *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 794 (1978)).  *Citizens United* affirmed the validity of the anti-corruption interest, however, as a

legitimate justification for restrictions on corporate campaign contributions, but found that banning independent expenditures was not a permissible remedy.[4]  *Id*. at 356-61.

Several years after *Citizens United*, the Supreme Court in *McCutcheon v. Federal Election Commission*, 134 S.Ct. 1434 (2014), reaffirmed the interest of combating *quid pro quo* corruption as a legitimate reason for regulating campaign contributions.  There, the Court explained that it is not permissible to regulate campaign contributions "simply to reduce the amount of money in politics" or "to restrict the political participation of some in order to enhance the relative influence of others."  *Id*. at 1441 (citations omitted).  Instead, "[a]ny regulation must instead target what we have called 'quid pro quo' corruption or its appearance," which refers to "the notion of a direct exchange of an official act for money."  *Id*. at 1441 (citations omitted).  "Campaign finance restrictions that pursue other objectives . . . impermissibly inject the Government into the debate over who should govern."  *Id*. (citation and internal quotation marks omitted).  "This Court has identified only one legitimate governmental interest for restricting campaign finances: preventing corruption or the appearance of corruption."  *Id*. at 1450.

Although PMC recognizes that *Citizens United* focused on independent expenditures rather than bans on direct corporate contributions, PMC contends that its reasoning makes *Beaumont* no longer applicable even in the context of direct contributions.  Contrary to PMC's implication, however, *Beaumont*, decided nearly seven years before *Citizens United*, remains good law and appears to be more controlling in the present case.  In *Beaumont*, a nonprofit advocacy group challenged the federal ban on corporate contributions as applied to nonprofit corporations.  539 U.S. at 150-51.  The plaintiff there argued that because a federal prohibition

---

[4] Part of the Court's reason for striking down the federal ban on independent expenditures was that the previous rationales for limiting corporate independent expenditures were largely based on the speakers' corporate identity, which is not a sufficient justification for limiting a speaker's political speech.  558 U.S. at 363-65.

on independent expenditures had been found unconstitutional as applied to nonprofit advocacy corporations, *see FEC v. Massachusetts Citizens for Life*, 479 U.S. 238, 259 (1986) ("*MCFL*"), bans on direct contributions should also be deemed unconstitutional as applied to nonprofits. *Beaumont*, 539 U.S. at 158.  The plaintiff in *Beaumont* further argued that the reasons behind the ban were not as applicable to nonprofit corporations as they were to large corporations and therefore would not survive strict scrutiny.  *Id*. at 159-61.  After explaining that a lower standard than strict scrutiny applied, the Supreme Court rejected these arguments and upheld the ban on direct contributions as consistent with the First Amendment.  In doing so, the Court noted the specific distinction that the Court in *MCFL* made between regulation of contributions and regulation of expenditures in that "restrictions on contributions require less compelling justifications than restrictions on independent spending."  *Id*. at 158-59 (quoting 479 U.S. at 259-60).  The Court in *Beaumont* also applied the same level of scrutiny to the ban as the parties agree should be applied in this case – i.e., that of being "closely drawn to match a sufficiently important interest," and rejected the notion that a complete ban should be subject to a more exacting level of scrutiny than simply a limitation.  539 U.S. at 162.

PMC is correct that some of the reasons discussed in *Beaumont* for justifying restrictions on corporate campaign contributions have been rejected by *Citizens United*.  As explained above, *Citizens United* makes clear that corporate political speech should not be restricted simply because of the speaker's identity in the corporate form, nor because of corporations' ability to aggregate great wealth.  558 U.S. at 349-54, 361-65.  To the extent that *Beaumont* may have relied upon such reasons, reasoning similar to *Austin's* anti-distortion rationale are no longer valid, at least with respect to independent expenditures.[5]  However, *Beaumont* also emphasized

---

[5] The Court notes, however, that *Citizens United* restricted its holding even in this regard to independent expenditures, which are not at issue here.  *See* 558 U.S. at 359.

the interest in preventing corruption and the related reason of anti-circumvention, noting the

concern that corporations can be used "as conduits for circumvention of [valid] contribution

limits," because members or owners could use the corporate form to divert money in a way that

"exceed[s] the bounds imposed on their own contributions."  *Id*. at 155 (internal citations and

quotation marks omitted).  *Citizens United* did not specifically address this reason, but neither

did it indicate that such a rationale was no longer valid.  *See Danielczyk*, 683 F.3d 611, at 618-19

(noting that *Citizens United* did not "undercut *Beaumont's* endorsement" of the anti-

circumvention interest); *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1124-25 (9th Cir.

2011) (explaining that *Citizens United* "rejected *Austin* for its reliance on the distinct anti-

distortion" rationale" which is based on equality "whereas the anti-circumvention interest is part

of the familiar anti-corruption rationale" which nothing in *Citizens United* invalidated) (internal

citations and quotation marks omitted).

   As explained above, the interest in preventing actual or apparent corruption was

specifically affirmed by the Supreme Court in *Citizens United* and in *McCutcheon*, and is the

only reason proffered by Kentucky's government in the case at hand.  Although *Citizens United*

reasoned that *independent expenditures* by corporations did not give rise to *quid pro quo*

corruption, the Court indicated that preventing such corruption is still a valid interest for other

speech restrictions.  558 U.S. at 356-57.  Therefore, as applied to PMC's instant case, the Court

does not believe *Citizens United* invalidates the holding in *Beaumont*, and it certainly does not

invalidate Defendants' justification for the ban at issue here.  If anything, *Citizens United*

supports Defendants' justification of preventing *quid pro quo* corruption as a valid reason and a

sufficiently important interest for Kentucky's restriction on corporate contributions.  *See* 558

U.S. at 358-59 (noting that *contribution* limits "*unlike* limits on *independent expenditures*, have

been an accepted means to prevent quid pro quo corruption") (emphasis added); *see also Danielczyk*, 683 F.3d at 618 ("While clarifying that the anti-corruption interest is limited to actual quid pro quo corruption or the appearance of it, as opposed to the appearance of influence or access, *Citizens United* did not deny that anti-corruption was a sufficiently important governmental interest, which is all that is required for closely drawn scrutiny.").

## 2

Although Kentucky's interest in preventing *quid pro quo* corruption or the appearance thereof is a legitimate problem for governments to solve, and is sufficiently important to justify certain restrictions on speech, the inquiry does not end there. *See McCutcheon*, 134 S.Ct. at 1450 (while preventing corruption in the electoral process is "compelling," the legislature may pursue that interest "only so long as it does not unnecessarily infringe an individual's right to freedom of speech; we do not truncate this tailoring test at the outset."). The Supreme Court has specified that regardless of the level of scrutiny applied, "we must assess the fit between the stated governmental objective and the means selected to achieve that objective." *Id.* at 1445. "In the First Amendment context, fit matters. Even when the Court is not applying strict scrutiny, we still require 'a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served . . . that employs not necessarily the least restrictive . . . but a means narrowly tailored to achieve the desired objective." *Id*. at 1456-57 (internal citation and quotation marks omitted).

Here, Defendants contend that Kentucky's ban on direct contributions is sufficiently closely drawn because corporations "should be able to form a state PAC and administer a state PAC and give money to candidates through that PAC."[6] Tr. at 40; *see also* R. 20 at 12 (citing

---

[6] As support for this statement, defense counsel points to KRS 121.150 (21) and admits that although a previous Advisory Opinion from 1991 has been followed as the policy of the agency for many years, in light of recent

Advisory Opinion 2014-003).  Defendants also point to *Minnesota Citizens*, 692 F.3d 864, in which the Eighth Circuit upheld similar laws, including prohibitions on direct corporate contributions, and argue that "[a] Minnesota-style PAC option also exists in Kentucky."  [R. 20 at 14 (citing KRS 121.170(1).]  Leaving aside for the moment the question of whether that is actually the current state of the law in Kentucky,[7] PMC contends that the PAC option is not enough to prevent the ban on direct contributions from being found unconstitutional after *Citizens United*.  [Tr. at 43; R. 19-1 at 18-19.]  PMC argues that a ban on all direct contributions, even with the PAC option that Defendants insist is present, is not closely drawn because having some type of cap on direct contributions or imposing donor disclosure requirements would be a less restrictive alternative.[8]  [R. 19-1 at 14-15.]

First, the relevant case law consistently upholds restrictions on direct corporate contributions when corporations can still participate in the political process through a PAC option.  *See, e.g., Beaumont*, 539 U.S. at 162-63 (characterizing the restriction on direct contributions as not being a "complete" ban because it included a PAC option and emphasizing the PAC option's existence when determining the ban was constitutional); *McConnell*, 540 U.S. at 203 ("The ability to form and administer separate segregated funds . . . has provided corporations and unions with a constitutionally sufficient opportunity to engage in express advocacy."); *Buckley*, 424 U.S. at 29 (upholding limits on direct contributions when such

---

changes such as *Citizens United*, it should no longer be interpreted as preventing corporations such as PMC from administering a state PAC.  Tr. at 40-43.

[7] PMC argues that the laws as written on their face do not appear to allow for this option.  [R. 23 at 14; Tr. at 42-43.]

[8] Part of PMC's support for this argument is that the ban does not apply to unions and LLCs.  Given Defendants' concession, however, that the ban should apply equally to similarly situated groups, it appears that PMC's remaining argument concerning "fit" consists of PMC's contention that a ban even with a PAC option is still overbroad.  As explained herein, however, if the ban does not apply to unions and LLCs as well as to corporations, PMC is correct that the ban is not sufficiently closely drawn to achieve the government's stated objective.

limitations did not "undermine to any material degree the potential" for indirect means of participation in campaign activities); *see also Iowa Right to Life Committee v. Tooker*, 717 F.3d 576, 602 (8th Cir. 2013) (upholding ban on corporate contributions but characterizing it as not a complete ban because a PAC option was possible).

In particular, the *Beaumont* Court found that the federal ban on direct corporate contributions was constitutional, and its rationale for this has not been over-ruled.  It should be noted that in determining the federal ban was "closely drawn" to achieve the government's valid interest, the Court observed that it was not "a complete ban" because the law allowed corporations and unions to participate in the federal electoral process through PACs.  *Beaumont*, 539 U.S. at 162-63.  "The PAC option allows corporate political participation without the temptation to use corporate funds for political influence . . . and it lets the Government regulate campaign activity through registration and disclosure . . . without jeopardizing the associational rights of advocacy organizations' members." *Id*. at 163.  Thus, a ban on a nonprofit corporation's direct contributions was not "bad tailoring" when contributions could be made through its PAC instead.  *See also FEC v. National Right to Work Committee ("NRWC")*, 459 U.S. 197, 201-02 (1982) (rejecting the argument that regulatory burdens on PACs and restrictions on their solicitation activities make the PAC option unconstitutional even if it is the only means for an advocacy corporation to make political contributions).

Second, PMC relies upon language in *Citizens United* which indicates that a PAC option is not sufficient to justify bans on independent expenditures.  There, the Court characterized PACs as "burdensome alternatives," which, because they "are expensive to administer and subject to extensive regulations," did "not alleviate the First Amendment problems" with the federal ban on corporate independent expenditures.  558 U.S. at 337.  However, it is important to

emphasize that the Court in *Citizens United* found the PAC option did not prevent a ban on *independent expenditures* from being unconstitutional, and in that context the Court applied strict scrutiny in determining the PAC option alone was not enough. *Id*. The Court differentiated that context from situations involving restrictions on direct contributions. *Id*. at 343, 345-46; *see also Thalheimer*, 645 F.3d at 1124-25 (rejecting argument that the reasoning in *Citizens United* about PACs in the context of bans on independent expenditures should also apply to bans on direct contributions and determining that a ban on direct contributions with no PAC option was not necessarily unconstitutional).

Third, PMC is correct that because disclosure requirements "do not impose a ceiling on speech," the Supreme Court has noted that "disclosure often represents a less restrictive alternative to flat bans on certain types or quantities of speech." *McCutcheon*, 134 S.Ct. at 1459-60 (citations omitted); *see also Citizens United*, 558 U.S. at 366-71. Thus, it would be constitutionally permissible for Kentucky to allow contributions while imposing disclosure requirements or other similar less restrictive alternatives. *See McCutcheon*, 134 S.Ct. at 1458-60 (noting "multiple alternatives available" that would serve the interests of anti-circumvention and anti-corruption while avoiding "unnecessary abridgement" of First Amendment rights) (quoting *Buckley*, 424 U.S. at 25). However, even if less restrictive alternatives such as disclosure requirements exist, the Court must give certain deference to the legislature's choice in regulating political involvement unless the legislature's action clearly violates federal constitutional requirements. *See Beaumont*, 539 U.S. at 156-57; *see also Ognibene*, 671 F.3d at 182 (noting the "judiciary owes special deference to legislative determinations regarding campaign contribution restrictions"). During oral arguments, counsel for Defendants contended that disclosure requirements would not achieve Kentucky's interest here because non-profit corporations

organized under 501(c)(4) such as PMC are exempt from public disclosure.  Tr. at 36-37; *see also NAACP v. Alabama ex rel. Patterson*, 357 U.S. 49 (1958).  The parties also agreed that setting up as an LLC, which is already subject to certain disclosure requirements, to avoid the ban on contributions would not necessarily solve the problem identified by Defendants.  Tr. at 37-39.  In light of the cases discussed above indicating that a PAC option is a valid means of allowing indirect corporate participation, and given the deference owed to the Kentucky legislature's concerns with disclosure requirements, the Court cannot say that a less restrictive alternative clearly exists such that the PAC option is insufficient.

Finally, the Sixth Circuit "has held that Kentucky's corporate contribution prohibition is "closely drawn" to the goal of combating corruption."  *See Kentucky Right to Life,* 108 F.3d at 646.  There, the court held that Kentucky's ban on direct corporate contributions did not violate the First Amendment.  108 F.3d at 645-46.  In doing so, the Sixth Circuit relied upon *National Right to Work,* 459 U.S. 197, and *Massachusetts Citizens for Life*, 479 U.S. 238, in rejecting the challenge to KRS 121.025 brought by a non-profit corporation, and in finding that Kentucky's ban sufficiently achieved the legislature's goal of reducing "actual and perceived corruption in the political process."  108 F.3d at 646.  Further, in relying on those cases the court noted that given the distinction made between direct contributions and independent expenditures, restricting direct corporate contributions is permissible.  *Id.*  Although this case was decided before *Citizens United*, as will be further explained below, PMC has not shown that the reasoning in *Citizens United* concerning a federal ban on independent expenditures can or should be applied in a way that invalidates the Sixth Circuit's previous analysis of Kentucky's law concerning direct contributions, nor the cases upon which the Sixth Circuit relied.

Even if the PAC option did not exist, PMC does not point to any authority where bans on direct contributions were found unconstitutional due to the lack of a PAC option, or indeed were found unconstitutional at all.  Moreover, because Defendants maintain that a PAC option does exist in Kentucky, until PMC establishes otherwise, the concern over the absence of a PAC option is rather academic.  In sum, PMC has not provided the Court with legal authority supporting its argument that Kentucky's ban on direct corporate contributions is not sufficiently closely drawn.[9]  In contrast, the cases discussed above consistently affirm restrictions on corporate contributions where a PAC option exists, and in the absence of contradictory authority, the Court would have to ignore such reasoning to find for PMC in this case.  Given Defendants' concession that PMC may utilize a state PAC option, and in light of the case law discussed above upholding federal bans on direct corporate contributions, PMC has not demonstrated a strong likelihood of success in proving that the ban is not closely drawn to achieve the legitimate goal of preventing corruption.

**3**

Finally, it is important to remember that at this stage in the litigation we are primarily focused on PMC's likelihood of success on the merits.  Concerning the argument that bans on direct corporate contributions are unconstitutional, PMC's success is rather doubtful, though not necessarily impossible, on the record presented thus far.  Of particular importance to this determination is that neither *Citizens United* nor subsequent cases have repudiated *Beaumont*. The *Citizens United* Court directly explained how and why it was overruling *Austin*, *see* 558 U.S. at 365, but did not address *Beaumont* or indicate it was overruling the cases that *Beaumont* itself

---

[9] Again, this conclusion is partly based on Defendants' concession that the unequal treatment of corporations and LLCs concerning bans on corporate contributions is not permissible.  The Court agrees with PMC that if the ban applies unequally to similarly situated groups, it is *not* sufficiently closely drawn.

relied upon.  Moreover, despite PMC's contention that bans on direct contributions no longer make sense when independent expenditures are allowed [R. 23 at 15], *Citizens United,* as well as other cases discussed herein, consistently differentiate between independent expenditures and direct contributions, and explain why the concern about corruption is much less in the context of indirect corporate expenditures.  558 U.S. at 357, 359 ("we now conclude that *independent expenditures*, including those made by corporations, do not give rise to corruption or the appearance of corruption" and then distinguishing *NRWC*, 459 U.S. at 206, as involving *contribution* limits rather than independent expenditures) (emphasis added); *see also McCutcheon*, 134 S.Ct. at 1444 (maintaining Supreme Court's historic distinction between expenditures and contributions); *Arizona Free Enterprise Club*, 131 S.Ct. at 2826-27 (noting that limits on *contributions* serve to combat corruption even though limits on independent expenditures do not); *Buckley,* 424 U.S. at 25, 47-48 (upholding FECA's restrictions on direct contributions because the potential for *quid pro quo* corruption was greater in the context of direct contributions than for independent expenditures).

In fact, in its discussion of *Buckley*, 424 U.S. 1, the *Citizens United* Court distinguished *Buckley's* affirmation of limits on direct contributions "in order to ensure against the reality or appearance of corruption" by emphasizing that *Buckley* did not extend that rationale to independent expenditures.  558 U.S. at 357.  The Court further explained that preventing *quid pro quo* corruption has historically been a sufficient justification for restrictions on direct corporate *contributions*, but that independent *expenditures* will not create an appearance of such corruption because they are "not coordinated with a candidate."  *Id*. at 360; *see also SpeechNow.org*, 59 F.3d at 696 (emphasizing that although limits on independent expenditures

violate First Amendment such reasoning does not apply to limits on direct corporate contributions to candidates).

Moreover, in direct contrast to *Beaumont*, the *Citizens United* Court focused exclusively on independent expenditures, which the parties agree are not at issue here, and it specifically declined to address the context of contribution limits.  *See* 558 U.S. at 356-57, 359-60. Accordingly, this Court cannot say that *Citizens United* is controlling in the present context, nor can we go against the applicable precedent in *Beaumont*, which the Supreme Court has not expressly overruled, and which this Court is therefore bound to follow.  *See Agostini v. Felton,* 521 U.S. 203. 237 (1997) ("[I]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.") (internal citation and quotation marks omitted); *see also Danielczyk*, 683 F.3d at 615 (noting that "*Agostini* principle" prohibits lower courts from concluding that recent Supreme Court cases have overruled prior Supreme Court precedent merely through implication); *Minnesota Citizens,* 692 F.3d at 879 (upholding ban on direct contributions in light of *Beaumont* and declining to expand *Citizens United* in light of "*Agostini* principle"); *United States v. Suarez*, 2014 WL 1898579, *6 (N.D. Ohio May 8, 2014) (relying on "*Agostini* principle" when declining to expand the holding of *Citizens United* in a way that ignores *Beaumont*).

Although the Sixth Circuit does not appear to have addressed this issue since *Citizens United*, other courts have rejected similar arguments that *Beaumont* is no longer controlling or that the reasons for striking down bans on independent expenditures should also be extended to restrictions on direct corporate contributions.  *See, e.g.*, *Wagner v. Federal Election Com'n*, 793

F.3d 1, 6 (D.C. Cir. 2015) (rejecting argument that *Citizens United* "cast doubt" on *Beaumont* and finding that "closely drawn" standard applies to both limits and complete bans on campaign contributions); *Iowa Right to Life Committee*, 717 F.3d at 601 (rejecting argument that *Beaumont* was on "shaky ground" after *Citizens United* and upholding complete ban on direct contributions even though *Citizens United* only mentioned contribution limits); *Danielczyk*, 683 F.3d at 616-17 (rejecting the argument that *Citizens United* repudiated *Beaumont's* reasoning and finding that *Beaumont* "based its conclusion on a century of law that has supported bans on direct contributions against for-profit corporations" but also "makes clear" that the federal ban on direct corporate contributions "is constitutional as applied to all corporations"); *Thalheimer*, 645 F.3d at 1124 (rejecting argument that *Beaumont* has been overruled by *Citizens United* and emphasizing that *Citizens United* applied to regulations of independent expenditures and not direct corporate contributions); *Ognibene*, 671 F.3d at 183-84 (upholding restrictions on direct corporate contributions in light of *Buckley* and *Beaumont* and declining to broaden the holding of *Citizens United* because in it "the Supreme Court preserved the distinction between expenditures and contributions" and its reasoning only applied to independent expenditures); *Green Party of Conn. v. Garfield*, 616 F.3d 189, 199 (2d Cir. 2010) ("Although the Court's campaign-finance jurisprudence may be in a state of flux (especially with regard to campaign-finance laws regulating corporations), *Beaumont* and other cases applying the closely drawn standard to contribution limits remain good law").

Moreover, federal law includes a ban on direct corporate contributions with a PAC option, *see* 52 U.S.C. § 30118,[10] which, as explained above, was upheld by the Supreme Court in

---

[10] The Federal Election Commission has acknowledged that because of *Citizens United* the prohibition on independent expenditures is no longer enforceable and has made appropriate changes to the law's application, but no such changes have been made concerning direct contributions. *See* Independent Expenditures and Electioneering

*Beaumont*.  PMC has not pointed to any legal authority indicating that the federal ban is

unconstitutional, nor has PMC indicated if or how Kentucky's ban differs from the federal one.

On the contrary, in addition to the fact that *Beaumont* has not been specifically overruled, several

cases exist in which federal courts rejected similar challenges to the federal ban on direct

corporate contributions even after *Citizens United* was issued.  *See, e.g., Wagner*, 793 F.3d at 5-6

(applying *Beaumont* to federal ban on campaign contributions instead of *Citizens United*);

*Danielczyk*, 683 F.3d at 615-16 (finding federal ban on direct corporate contributions is not

unconstitutional even after *Citizens United*); *SpeechNow.org*, 599 F.3d at 696 (specifying that its

application of *Citizens United* in striking down contributions to independent-expenditure-only

organizations does not affect the legality of federal restrictions on direct contributions); *Suarez*,

2014 WL 1898579, at *7 (emphasizing that *Citizens United* "left untouched *Beaumont's*

holding" that federal prohibition on direct corporate contributions is permissible).

### III

Thus, apart from controlling authority clearly directing otherwise, this Court will not

expand the Supreme Court's holding in *Citizens United* into the context of direct corporate

contributions, especially in a case such as this where the main controversy between the parties

before it has been largely resolved.  As noted above, PMC has the fairly heavy "burden of

proving that the circumstances clearly demand" the requested injunctive relief in this situation,

and no preliminary injunction should issue unless PMC clearly meets that burden.  *Overstreet,*

305 F.3d at 573.  Assessing PMC's likelihood of success on the merits "does not involve a final

determination of the merits, but rather the exercise of sound judicial discretion on the need for

---

Communications by Corporations and Labor Organizations, 79 FR 62797-02; *see also* FEC Statement on *Carey v.
FEC*, Oct. 5, 2011, *available at* http://www.fec.gov/press/press2011/20111006postcarey.shtml.

interim relief." *Nat'l Org. for Women v. Soc. Sec. Admin.*, 736 F.2d 727, 733 (D.C.Cir.1984) (internal quotation marks omitted).  The circumstances in this case do not "clearly demand" all of the relief PMC requests.  As long as the Kentucky laws at issue allow corporations to administer a state PAC and contribute to state candidates through that PAC, and as long as the ban on direct contributions applies equally to corporations, LLCs, and other similarly situated groups, such laws are closely drawn to combat the legitimate interest of preventing the reality or appearance of *quid pro quo* corruption and are therefore constitutional.  If the laws at issue are not structured this way, however, then to the extent they are not, they may violate PMC's First Amendment rights.  Because at this stage in the litigation PMC has not shown a strong likelihood that this is true, however, the requested relief will only be granted in part.[11]

In light of the above analysis, the Court finds that Section 150 of the Kentucky Constitution and the way in which it has been implemented through applicable statutes and Advisory Opinions is unconstitutional to the extent that any ban on direct corporate contributions does not apply equally to unions and LLCs as well as to corporations.  Additionally, the Court finds that PMC and other similarly situated corporations, LLCs, and unions are entitled to equal treatment in the exercise of a PAC option, including state PACs.  However, to the extent that Kentucky's campaign finance law does allow for a corporate PAC option, and to the extent that such an option applies equally to all similarly situated groups, the ban on corporate direct contributions is not unconstitutional.  Accordingly, and the Court being sufficiently advised, it is hereby ORDERED as follows:

---

[11] In the context of alleged constitutional infringements, "the likelihood of success on the merits often will be the determinative factor," *Connection Distrib. Co.*, 154 F.3d at 288, because the other factors "largely depend on the constitutionality of the statute." *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007); *see also Congregation Lubavitch,* 923 F.2d at 460.  Because PMC has demonstrated a likelihood of success on the merits concerning its Equal Protection claim, but has not done so concerning its First Amendment claim, the Court need not extensively address the other factors for injunctive relief.  *See Jones v. Caruso*, 569 F.3d at 265-66 (6th Cir. 2009).

1.      Plaintiff PMC's Motion for Preliminary Injunction [**R. 19**] is **GRANTED in PART and DENIED in PART**.

2.      Defendants are enjoined from enforcing Section 150 and its implementing laws against PMC in a manner that results in disparate treatment of corporations, unions, and LLCs.

3.      Defendants are enjoined from enforcing Section 150 and its implementing laws in a manner that would prohibit PMC from participating in the political process through a state PAC in the same manner as unions and LLCs are allowed to participate.

4.      On the record presented thus far, PMC has not shown a likelihood of success to warrant further injunctive relief concerning its First Amendment claim.  To the extent that PMC still seeks further relief, the parties must provide further clarification to the Court within **thirty (30) days** from the entry of this Order as to:

a.      Whether there is any remaining dispute between them, and if so,

b.      Their respective positions concerning that dispute.

This the 31st day of March, 2016.

Gregory F. Van Tatenhove
United States District Judge